## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ALIAN C.-L.,

           Petitioner,

v.

MARKWAYNE MULLIN, *Secretary, Department of Homeland Security*; TODD M. LYONS, *Acting Director, Immigration and Customs Enforcement*; and DAVID EASTERWOOD, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

           Respondents.[1]

Case No. 26-cv-2335 (LMP/ECW)

**ORDER GRANTING HABEAS PETITION**

---

Daniel P. Suitor, **Daniel P. Suitor, PLLC, Minneapolis, MN**, for Petitioner.

Ebony N. Thomas, **United States Attorney's Office, Minneapolis, MN**, for Respondents.

Petitioner Alian C.-L. was ordered removed from the United States in June 2025. But because both his home country and a third country refused to accept him, he remains in immigration detention. Alian C.-L. argues that his continued detention violates his due process rights. The Court agrees, so Alian C.-L.'s habeas petition is granted.

## BACKGROUND

Alian C.-L. is a native and citizen of Cuba who entered the United States at the southern border on October 22, 2021. ECF No. 6 ¶ 4. Immigration officers encountered

---

[1] The Court refers to Respondents as the "Government" in this Order.

Alian C.-L. shortly after his entry, served him with a notice to appear for removal proceedings, and released him on an order of recognizance. *Id.* Alian C.-L. then began residing in Yankton, South Dakota. ECF No. 1 ¶ 12.

After three convictions for driving while intoxicated and an arrest for an incident of domestic violence, U.S. Immigration and Customs Enforcement ("ICE") took Alian C.-L. into custody on April 15, 2025, for removal proceedings. ECF No. 6 ¶¶ 5–11. On June 16, 2025, an immigration judge ordered Alian C.-L. removed to Cuba. ECF No. 6-3 at 3. Alian C.-L. waived his right to appeal the immigration judge's order, rendering his removal order administratively final on June 16, 2025. *Id.* at 4; *see* 8 C.F.R. § 1241.1(b) (explaining that a removal order becomes final upon "waiver of appeal" by the noncitizen).

Removing Alian C.-L. from the United States has proven tricky for the Government. Cuba has historically refused to accept its citizens ordered removed from the United States. ECF No. 1 ¶¶ 2–3. On July 21, 2025, ICE learned that Cuba refused to repatriate Alian C.-L. ECF No. 6 ¶ 14. ICE then pursued Alian C.-L.'s removal to Mexico, which had begun accepting "many citizens" of countries where it was not possible or feasible to remove those countries' nationals. *Id.* ¶ 15. However, on October 12, 2025, ICE learned that Mexico would not accept Alian C.-L. "for unknown reasons." *Id.* ¶ 18. Officials at ICE headquarters then advised ICE officials in Minnesota that they would seek "additional third country options and provide updates as available." *Id.* ¶ 19. Based on the record, it does not appear that any updates on removal options for Alian C.-L. have been forthcoming since October 2025.

Alian C.-L. has remained in immigration custody since April 15, 2025. *Id.* ¶¶ 10–11. Federal law provides that a noncitizen ordered removed from the United States generally must be removed within 90 days of a final removal order. 8 U.S.C. § 1231(a)(1)(A). If a noncitizen is not removed within 90 days, ICE must conduct a custody review to determine whether the noncitizen should be released from detention on an order of supervision. *See* 8 C.F.R. § 241.4(h). ICE conducted that custody review for Alian C.-L. and issued a "Decision to Continue Detention" on September 30, 2025, determining that Alian C.-L. should remain in immigration custody because ICE believed his removal to a third country was "likely in the reasonably foreseeable future," and because his criminal history suggested "a threat to public safety if released." ECF No. 6-5 at 1. The Decision to Continue Detention explained that ICE headquarters would conduct another custody review in 90 days if Alian C.-L. remained in immigration detention. *Id.* ICE officials in Minnesota provided all relevant case documentation to ICE headquarters for that second custody review but, as of this date, ICE headquarters has not rendered a decision on the second custody review. ECF No. 6 ¶ 20.

On April 22, 2026, Alian C.-L. filed a petition for a writ of habeas corpus, alleging that his continued immigration detention violates his due process rights. *See* ECF No. 1. The Court ordered the Government to respond to Alian C.-L.'s petition no later than April 30, 2026, with any reply brief due by May 7, 2026. ECF No. 3. The Government timely responded and opposed Alian C.-L.'s petition. ECF No. 5. Alian C.-L. timely filed a reply brief. ECF No. 7.

3

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

Federal law provides that a noncitizen ordered removed must be detained during the period necessary to effectuate the removal. 8 U.S.C. § 1231(a)(2)(A). But the Due Process Clause does not allow that detention to go on indefinitely. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In *Zadvydas*, the Supreme Court held that after a removal order becomes final, the Government has six months to carry out the removal order. *See id.* at 701. After that six-month period has expired, if the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must respond with evidence "sufficient to rebut that showing." *Id.* If the Government cannot rebut that showing, then the noncitizen must be released, subject to conditions and supervision prescribed by ICE. *Id.* at 699–700.

As an initial matter, the presumptively reasonable six-month detention period has expired: Alian C.-L.'s removal order became final on June 16, 2025, ECF No. 6-3 at 3–4, meaning his six-month detention period ended no later than December 16, 2025. Having satisfied that threshold issue, Alian C.-L. must next provide "good reason to believe that

4

there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 690.

Alian C.-L. does so. Not one, but *two* countries have refused to accept Alian C.-L. Alian C.-L.'s native country of Cuba refuses to repatriate him. ECF No. 6 ¶ 14. Courts have found no significant likelihood of removal where, as here, "the detainee's country of origin refuses to issue a travel document." *Ahmed v. Brott*, No. 14-cv-5000 (DSD/BRT), 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015), *report and recommendation adopted*, 2015 WL 1542155 (D. Minn. Apr. 7, 2015); *see, e.g.*, *Gholestani v. U.S. Dist. Ct.*, No. CIV-25-1392-R, 2026 WL 1026975, at *4–5 (W.D. Okla. Feb. 13, 2026) (finding no significant likelihood of removal in the foreseeable future when petitioner's native country refused to issue a travel document); *Shefqet v. Ashcroft*, No. 02 C 7737, 2003 WL 1964290, at *4 (N.D. Ill. Apr. 28, 2003) (same).

If that were not enough, the Government's secondary option for removal— Mexico—also refused to accept Alian C.-L., despite Mexico accepting "many citizens of countries including Cuba" where it was "not possible or feasible" to execute removal. ECF No. 6 ¶¶ 15, 18. Apparently Alian C.-L. is not among the "many" whom Mexico will accept, which suggests that there is something about Alian C.-L.'s case that makes it particularly difficult to facilitate his removal. The Government's failed efforts at third-country removal provides further good reason to believe that Alian C.-L.'s removal is not significantly likely in the reasonably foreseeable future. *See Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398–99 (D.N.J. 2025) (finding no significant likelihood of removal in the foreseeable future when petitioner could not be removed to his home country and

third-country removal efforts proved unsuccessful during the initial 90-day removal period); *Doe v. Oddo*, No. 3:25-CV-00353-RAL, 2026 WL 873011, at *2 (W.D. Pa. Mar. 30, 2026) (finding similarly when two alternative countries refused to accept the petitioner).

Having found good reason to believe that Alian C.-L.'s removal is not significantly likely in the reasonably foreseeable future, the Government must now offer sufficient evidence to rebut that conclusion. *Zadvydas*, 533 U.S. at 701. The Government first offers the declaration of an ICE deportation officer, who attests that in October 2025, officials at ICE headquarters "advised they would confer with [ICE] leadership on additional third country options and provide updates as available." ECF No. 6 ¶ 19. Without more, that evidence is woefully insufficient to demonstrate a significant likelihood of removal in the reasonably foreseeable future. Courts regularly refuse to find that the Government meets its burden under *Zadvydas* when the Government offers "little more than generalizations regarding the likelihood that removal will occur" to a third country. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) (collecting cases); *Gholestani*, 2026 WL 1026975, at *5 (finding lack of any "substantial updates" as to a third country removal rendered petitioner's removal unlikely); *M. A. v. Baltazar*, No. 26-cv-00755-NYW, 2026 WL 809842, at *3 (D. Colo. Mar. 24, 2026) (finding "vague statement" that "ICE is pursuing Petitioner's removal to alternative countries" provided "no meaningful information to the Court and does not demonstrate that removal is likely"); *Bernshtein v. U.S. Att'y Gen.*, No. 3:25-cv-1153-JEP-PDB, 2026 WL 352907, at *5 (M.D. Fla. Feb. 9, 2026) (refusing to credit Government's "bare-bones allegation" that it is "continuing to explore third-country

6

removal options"). Indeed, seven months have passed since ICE headquarters officials said they would explore additional third-country removal options, yet no updates appear to have materialized. The Government does not even identify a country to which it is attempting to seek Alian C.-L.'s removal, let alone the steps it has taken to seek third-country removal and the reasonably foreseeable results of those efforts. As the wealth of case law cited above makes clear, the Government's vague generalizations about the potential for third-country removal fall far short of carrying its burden under *Zadvydas*.

The Government next asserts that it has "not determined that there is no significant likelihood of removal in the reasonably foreseeable future." ECF No. 5 at 8. But that gets things backwards: the Government now bears an affirmative burden to "respond with evidence sufficient" to show that there *is* a significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. The Government relatedly seems to believe that the fact that ICE headquarters has not conducted a second 90-day custody review is a point in its favor, ECF No. 5 at 8, but that fact actually cuts against the Government. That second review was due in late December 2025, ECF No. 6 ¶ 20; ECF No. 6-5 at 1, and its months-long delay only confirms Alian C.-L.'s assertion that the Government has taken no action on his case for months.

Finally, the Government argues that Alian C.-L.'s criminal history makes him a safety risk to the public. ECF No. 5 at 9. *Zadvydas* recognized the potential for preventative detention based on dangerousness, but "only when limited to specially dangerous individuals and subject to strong procedural protections." 533 U.S. at 690–91. To that end, federal regulations implementing *Zadvydas* established a special process for

7

detaining noncitizens who "pose a special danger to the public." 8 C.F.R. § 241.14(f). The Government, however, has not elected to invoke that process to continue detaining Alian C.-L.

Moreover, public safety concerns about Alian C.-L.'s release can be alleviated through imposing conditions of release on him, as recognized by *Zadvydas*. 533 U.S. at 700. These conditions may include travel restrictions, reporting requirements, electronic monitoring, and a requirement to remain law-abiding. *See* 8 C.F.R. § 241.5(a). If Alian C.-L. violates any of those conditions of release, he "may no doubt be returned to custody."[2] *Zadvydas*, 533 U.S. at 700.

In sum, because Alian C.-L. has shown that his removal is not significantly likely in the reasonably foreseeable future—a showing that the Government has not rebutted—continued immigration detention violates Alian C.-L.'s due process rights. The Court therefore grants his habeas petition and orders his release from custody.

## CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Alian C.-L.'s Petition for a Writ of Habeas Corpus (ECF No. 1) is **GRANTED**;

2. The Government is **ORDERED** to release Alian C.-L. from custody no later than Wednesday, May 13, 2026, subject to conditions and supervision prescribed by ICE; and

---

[2] The status of Alian C.-L.'s criminal proceedings in South Dakota related to an incident of domestic violence is unclear, meaning that South Dakota authorities may also seek to detain Alian C.-L. to complete those criminal proceedings. *See* ECF No. 6-6.

3.      No later than Thursday, May 14, 2026, the Government is **ORDERED** to provide a declaration affirming that Alian C.-L. was released from custody in accordance with this Order.

Dated: May 8, 2026                        *s/Laura M. Provinzino*
                                             Laura M. Provinzino
                                             United States District Judge